IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Liptis Pharmaceuticals USA, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Ingraham Group, LLC; Sami Omar,<br><br>Defendants. | **Civil. No. 21-cv-01485(GMM)** |

**OPINION AND ORDER**

Pending before the Court is Ingraham Group, LLC ("Ingraham") and Mr. Sami Omar's ("Mr. Omar") (collectively "Defendants") *Motion to Stay Proceedings under the Colorado River Doctrine*. (Docket No. 57). The Motion to Stay is **GRANTED**.

**I.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

On October 5, 2021, Liptis Pharmaceuticals USA, Inc. ("Liptis USA" or "Plaintiff") filed a Complaint against Ingraham. (Docket No. 1). On December 29, 2021, it filed an Amended Complaint to join Mr. Omar as a defendant. (Docket No. 13). Therein, Liptis USA alleged that Defendants, Mr. Omar and Ingraham, —knowingly and maliciously— interfered with a January 2018, ten-year contract, ("2018 Agreement") between Liptis USA and Liptis for Pharmaceuticals and Medical Devices SAE, formerly known as Liptis Egypt for Pharmaceuticals and Medical Devices SAE ("Liptis

Egypt"). Plaintiff's claim is brought pursuant to Article 1802 of the Puerto Rico Civil Code (Puerto Rico Federal Case). Id. at 6.

Plaintiff argues that Ingraham, a limited liability company registered with the Puerto Rico Department of State, was solely created to maliciously interfere with the 2018 Agreement. Plaintiff reasons that to the extent that Liptis Egypt was its only client, had no previous history of operations with them, and none since the Liptis Egypt transactions, there was an ulterior illegal motive in Ingraham's creation. Id. at 3. Plaintiff alleges that around November 2020, Mr. Omar, using Ingraham as a corporate alter ego, knowingly and maliciously interfered with the 2018 Agreement and benefited from receiving multiple payments through wire transfers. Id. at 4. Consequently, Plaintiff claims damages resulting from the alleged interference.

On June 30, 2022, Ingraham filed its Answer to the Amended Complaint. (Docket No. 41). On December 19, 2022, Mr. Omar filed his Answer to the Amended Complaint. (Docket No. 55). On February 13, 2023, Defendants filed a *Motion to Stay Proceedings under the Colorado River Doctrine*. (Docket No. 57). They claim that the next day after filing the Amended Complaint before this Court, on December 30, 2021, Liptis USA filed a *First Amended Verified Complaint* against Liptis Egypt —the other party to the 2018 Agreement with which Defendants allegedly interfered— before the Supreme Court of the State of New York, County of Rockland, in the

case captioned <u>Liptis Pharmaceuticals USA Inc v. Liptis for Pharmaceuticals and Medical Products SAE</u>, and docketed under Index No. 35274/2021 ("New York State Case"). <u>Id.</u> at 2.

Defendants assert that in the New York State Case, Liptis USA alleges trademark infringement and unfair competition under common law; trade name and trademark dilution under New York General Business Law; breach of contract; breach of the covenant of good faith and fair dealing, and unjust enrichment. <u>Id.</u> They add that, under the 2018 Agreement, Liptis USA would supply raw material to Liptis Egypt who could then manufacture and sell certain pharmaceutical, nutraceutical, and consumer healthcare products in Egypt and use, in a limited fashion, certain Liptis USA's intellectual property rights. <u>Id.</u> at 2-3.

In the New York State Case, Liptis USA also claimed that Liptis Egypt breached the 2018 Agreement, and others[1], by cutting off all business with them and engaging in an illegal competition. They contend that this constitutes a breach of the exclusive supply, manufacture, and licensing contract. As per Liptis USA's allegations in the New York State Case, in 2020, Liptis Egypt purportedly issued $4.66 million to Ingraham as payment for supply

---

[1] Liptis USA alleges the 2018 Agreement is related to the 2008 and 2016 agreements also in question before the New York State Case. They maintain the 2018 Agreement modifies said contracts. *See* NYSCEF Docket No 113 at 22.

of raw materials for products subject to the 2018 Agreement at the same prices as Liptis USA would have under the 2018 Agreement. Id.

On January 19, 2022, Liptis Egypt filed its *Verified Answer to First Amended Complaint with Counterclaim* in the New York State Case. It argued that the 2018 Agreement entered between the parties was null and void *ab initio* because the person acting on behalf of Liptis USA lacked authority to enter such contracts. Id. at 4; Exhibit 2 at 21. Additionally, Liptis Egypt posited that, even if the 2018 Agreement was valid, there was no breach of contract. Id. The New York State Case is pending.

Hence, Defendants argue that the New York State Case and the Puerto Rico Federal Case are grounded on the existence of the 2018 Agreement. They add that while the validity of the 2018 Agreement has been challenged in the New York State Case, here Plaintiff imputes Ingraham with tortious interference with that same contract. They argue a stay is warranted under the Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), until after the New York State Court decides on the validity and enforceability of the 2018 Agreement.

On March 13, 2023, Liptis USA filed its *Motion in Opposition to Stay in Proceeding under the Colorado River Doctrine*. (Docket No. 66). Liptis USA argues that the New York and Puerto Rico claims are not parallel, since the New York State Case is: (1) "based around the validity of a contractual obligation Liptis USA went

into with Liptis Egypt, a complete stranger to the case at hand". Id. at 4; (2) Defendants are not parties to the New York action; and (3) Puerto Rico's federal court is the commonsense forum for any claim against Ingraham and Mr. Omar, as is it involves a Puerto Rican corporation ruled by local law and jurisprudence. Id. Liptis USA further argues that after weighing all the eight factors established in Colorado River, *supra*, none of them lean in favor of a stay. According to Liptis USA, the first and second factors are neutral, since neither the Puerto Rico Federal Case nor the New York State Case involve the comprehensive disposition of rights in a particular property (*res*), and New York is just as geographically inconvenient for the Defendants as Puerto Rico is for the Plaintiff. As to the third factor, Liptis USA argue that there is no exceptional basis that places this case "beyond the pale of duplicative proceedings", as this case "involves a simple contract dispute requiring application of settled local law". Id. at 5. Regarding the fourth factor, Liptis USA alleges that it remains neutral, since the progress of the New York State Case bears no weight in the Puerto Rico Federal Case. They contend that although the New York State Case was filed before the Puerto Rico Federal Case, they are not parallel because they bare no identical claims or parties. Plaintiff also argues that the fifth factor is neutral because the Puerto Rico Federal Case does not raise an issue of federal law which is better resolved by a federal court,

Case 3:21-cv-01485-GMM   Document 91   Filed 06/07/23   Page 6 of 19

Civil. No. 21-1485(GMM)
Page -6-

nor does it involve particularly novel questions of state law. As to the sixth, seventh and eighth factors, likewise, Liptis USA argues they are neutral, and unapplicable to the case at hand, as it is not a parallel litigation. Id. at 6.

On March 30, 2023, Defendants filed their *Reply in Support of Motion to Proceedings under the Colorado River Doctrine*. (Docket No. 74). In essence, they argue that further litigation in the Puerto Rico Federal Case is a waste of judicial and the parties' resources, since the main threshold issue is the existence, validity and/or alleged breach of the 2018 Agreement on which this case is predicated on. Id. at 4. Defendants further argue that while this case involves a tortious interference suit under Puerto Rico law, its basis depends on the existence of a valid contractual relationship between Liptis USA and Liptis Egypt —an issue subject to interpretation under New York State law— pursuant to the 2018 Agreement. Id.

On April 14, 2023, Liptis USA reiterated its arguments in opposition to the stay. (Docket No. 82). On their part, Defendants filed a response to Liptis USA's sur-reply on April 21, 2023. (Docket No. 85). In sum, Defendants argue that the New York State Court is the forum that should rule on the existence and validity of the 2018 Agreement, which gave rise to both actions. By providing a copy of the 2018 Agreement, Defendants contend that the stay is warranted as its dispositions expressly state that it

"shall be governed by and construed in accordance with the laws of the State of New York in the United States of America"; and that "[a]ny and all disputes, differences, controversies or claims arising out of or in connection with th[e] [2018] Agreement, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by in the courts of the State of New York." Id. at 5; Exhibit 1 at 15.

## II. LEGAL STANDARD

Federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them" Colorado River, 424 U.S. at 817, and it is well-established that a pending, parallel action in state court "is no bar to proceedings concerning the same matter in the Federal court having jurisdiction," McClellan v. Carland, 217 U.S. 268, 282(1910). However, in Colorado River, the Supreme Court outlined exceptional circumstances in which "the pendency of a similar action in state court may merit federal abstention based on 'considerations of wise judicial administration' that counsel against duplicative lawsuits." Jimenez v. Rodriguez-Pagan, 597 F.3d 18, 27 (1st Cir. 2010). "Of all the abstention doctrines," the Colorado River abstention "is to be approached with the most caution, with '[o]nly the clearest of justifications' warranting dismissal." Id. (alteration in original) (quoting Colorado River, 424 U.S. at 819). Accordingly, a court's "authority to find such

a clear justification is confined by an exceptional circumstances test, whose non-exclusive list of factors" include:

> (1) whether either court has assumed jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

Id. at 27-28 (alteration in original) (citations and internal quotation marks omitted). "No one factor is necessarily determinative." Colorado River, 424 U.S. at 818-19. Rather, a court must engage in "a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983).

### III. DISCUSSION

As a threshold matter, the Court must decide whether the Puerto Rico Federal Case and the New York State Case are "sufficiently parallel" that the "state action resolve[s] all of the claims in the federal case." Glassie v. Doucette, 55 F.4th 58, 64 (1st Cir. 2022) (quoting Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 947 F.2d 529, 533 (1st Cir. 1991)). A stay issued under the Colorado River doctrine "necessarily contemplates that the federal court will have nothing further to do in resolving any

substantive part of the case." Id. (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 28).

In the Puerto Rico Federal Case, Liptis USA claims Ingraham and Mr. Omar tortiously interfered with their 2018 Agreement with Liptis Egypt. At the New York State Court Case, Liptis USA claims that Liptis Egypt is responsible for trademark infringement and unfair competition under common law; trade name and trademark dilution under New York General Business Law; breach of contract; breach of the covenant of good faith and fair dealing, and unjust enrichment, in relation to three agreements between Liptis USA and Liptis Egypt, including the 2018 Agreement. Notably, Liptis Egypt filed a *Verified Answer to First Amended Complaint with Counterclaim* in the New York State Case wherein it included as an affirmative defense that the 2018 Agreement is null and void. (Docket No 57 at 4). A review of the New York State Case docket reveals they reiterated this argument in the *Verified Answer to Second Amended Verified Complaint* filed on March 1, 2023. See NYSCEF Docket No. 122.

Hence, contrary to Plaintiff's averments, these actions are indeed parallel. While Liptis Egypt is not a party to the Puerto Rico Federal Case, by no means are they a "complete stranger" to the claim. (Docket No. 66 at 4). Similarly, while Ingraham is not a party to the New York State Case, they are named in the complaint

as an interested party. Furthermore, as recent as February 14, 2023, in the New York State Case, the Court concluded:

> Here, <u>the same Plaintiff is suing based on the same legal theory of intentional interference with a contractual relationship in two courts</u>. In one court, Liptis Egypt, of which Lofti Omar is the CEO, is the defendant. In the other, the COO of Liptis Egypt, Sami Omar, and his "alter ego" corporation, the Ingraham Group, which Sami and Lofti are allegedly using to interfere with Plaintiff's business relationships to benefit Liptis Egypt, are defendants. <u>The Court acknowledges that the defendants are not identical. However, they are alleged to all be united in interest, conspiring together, and committing nearly the exact same conduct, acting essentially in concert to benefit Liptis Egypt, and themselves individually. The Plaintiff, who is identical in both actions, is seeking damages in each Court based on the same conduct.</u> *See* NYSCEF Docket No 112. (emphasis added).

Under <u>Colorado River</u> abstention doctrine, federal and state legal proceedings may be deemed "parallel", even if there is not complete identity of parties in both proceedings. <u>Estee Lauder Companies Inc. v. Batra</u>, 430 F. Supp. 2d 158, 24 I.E.R. Cas. (BNA) 897 (S.D. N.Y. 2006).

The Court must now balance the Colorado River abstention doctrine factors. From the outset, the Court may discard several factors which are either inapplicable or neutral to the Puerto Rico Federal Case. As to the <u>first</u> factor: there is no *res* in controversy. Likewise, as to <u>second</u> factor, the state and federal forums are: (a) equally geographically inconvenient to the parties; and (b) can adequately protect the parties' interests. *See* <u>United States v. Fairway Capital Corp.</u>, 483 F.3d 34, 43 (1st

Cir. 2007) (finding that the adequacy of the state forum is only relevant or important "when it disfavors abstention.").

### A. Desirability of avoiding piecemeal litigation

The <u>third</u> factor, the desire to avoid piecemeal litigation, weights in favor of abstention under the <u>Colorado River</u> doctrine. The "piecemeal litigation" is more than the repetitive adjudication that occurs in all cases involving the <u>Colorado River</u> doctrine. *See* <u>Jiménez</u>, 597 F.3d at 29. Concurrent federal-state jurisdiction over the same action will necessarily involve some degree of "routine inefficiency that is the inevitable result of parallel proceedings." <u>Villa Marina Yacht Sales, Inc. v. Hatteras Yachts</u>, 915 F.2d 7, 16 (1st Cir. 1990). Therefore, when analyzing this factor, "[p]iecemeal litigation" must refer to some additional factor "that places the case beyond the pale of duplicative proceedings" by providing an exceptional basis, such as a clear competing policy or special complication, to surrender federal jurisdiction. <u>Jiménez</u>, 597 F.3d at 29.

Here, the New York State Case entertains "an issue of state law which could moot or otherwise inform the federal litigation." <u>Currie v. Grp. Ins. Comm'n</u>, 290 F.3d 1, 3 (1st Cir. 2002). *See also* <u>Interstate Material Corp. v. City of Chicago</u>, 847 F.2d 1285, 1289 (7th Cir. 1988) (staying a case pursuant to <u>Colorado River</u> because the claims in the federal suit could be mooted by a prior pending state litigation.) Specifically, after carefully reviewing

the New York State Case pleadings and documents submitted by Defendants at Docket No. 57, the Court notes that it involves, among others, the 2018 Agreement. Moreover, the New York State Case's electronic docket revealed that in Liptis USA's *Verified Second Amended Complaint* filed on March 1, 2023, it seeks damages for the breach of the 2018 Agreement and alleges that "[u]pon information and belief, the Ingraham Group was established in December 2019 for the sole purpose of maliciously interfering with Liptis USA's contractual and business relation with Liptis Egypt." *See* NYSCEF Docket No 113 at 3. In response, Liptis Egypt submitted a *Verified Answer to Second Amended Verified Complaint*. Their claim is that the 2018 Agreement is null and void and therefore, not enforceable. NYSCEF Docket No. 122. Therefore, at the center of the New York State Case is the validity of the 2018 Agreement with which, as alleged, Ingraham tortiously interfered with. Under the law, for Plaintiffs to establish tortious interference, they must first demonstrate the existence of a contract with which a third party has interfered. *See* Alpha Biomedical and Diagnostic Corp. v. Philips Medical Systems Netherland BV*,* 828 F. Supp. 2d 425, 430 (D.P.R. 2011); Jusino Figueroa v. Walgreens*,* 155 DPR 560, 575-576 (2001); Dolphin Int'l of Puerto Rico v. Ryder Truck Lines, 127 DPR 869, 879 (1991). Yet, if in the New York State Case is determined that the 2018 Agreement is not valid or null, then there can be no

tortious interference claim. Accordingly, factor (3) weighs in favor of abstention.

### B. The order in which the forums obtained jurisdiction

As to the fourth factor, the Supreme Court established this prong "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Moses H. Cone Mem'l Hosp., 460 U.S. at 26. In other words, this factor "favors the case that is the more advanced at the time the Colorado River balancing is being done." To that extent, the First Circuit has characterized the label as "a misnomer", precisely because the strict order in which courts obtain jurisdiction is less important than the relative progress of the suits. *See* Jimenez, 597 F.3d at 30 (quoting Gonzalez, 926 F.2d at 4).

The record reflects that the proceedings at the New York State Case commenced with the filing —on September 11, 2011— of a *Verified Complaint*. (NYSCEF Docket No. 1). In the Puerto Rico Federal Case, Liptis USA filed the Complaint on October 15, 2021, (Docket No. 1), and an Amended Complaint to join Mr. Omar as a co-defendant on December 29, 2021. (Docket No. 13). The day after filing the Amended Complaint in the same case, on December 30, 2021, Liptis USA filed a *First Amended Verified Complaint* against Liptis Egypt in the New York State Case. (NYSCEF Docket No. 5). As the New York State Case docket reflects, its proceedings are

underway —and in a more advanced stage— than the proceedings in the Puerto Rico Federal Case. The state action, for instance, is well into discovery while the federal action has not progressed, and a Joint Rule 26(f)(3) report with a proposed discovery plan was recently filed on April 27, 2023. (Docket No. 86). Hence, the more advanced proceedings of the state action compared to that of the federal action weighs heavily for abstention by this Court.

### C. Whether state or federal law controls

As to the fifth factor, whether state or federal law controls, "in some rare circumstances the presence of state-law issues may weigh in favor" of surrendering jurisdiction, but "the presence of federal-law issues must always be a major consideration weighing against surrender." Moses H. Cone Mem'l Hosp., 460 U.S. at 26. The source-of-law factor deserves no weight where "neither complex nor novel issues of local law are apparent." Nazario-Lugo v. Caribevisión Holdings, Inc., 670 F.3d 109, 118 (1st Cir. 2012).

When federal law controls most of the parties' claims, that factor is a "major consideration" against abstention. Cedar Rapids Cellular Tel., L.P. v. Miller, 280 F.3d 874, 879 (8th Cir. 2002). However, when governed only partly by federal law, and "the bulk of the litigation" revolves around state law, it is a factor the Supreme Court has expressly relied upon in approving a federal court's stay. Moses H. Cone, 460 U.S. at 24 n.29 (citing Colorado River, 424 U.S. at 820). (Emphasis added).

Civil. No. 21-1485(GMM)
Page -15-

Here, state substantive law will apply to the bulk of the litigation because this claim was brought in federal court through diversity jurisdiction, and there is no federal substantive law at issue. Moses H. Cone Mem'l Hosp., 460 U.S. at 24 n.29. The Court notes that although the interpretation of the 2018 Agreement at issue is a matter of state law, federal courts are well equipped to decide contract cases under state law and routinely do so. Yet, it is also important to note that present action arises from a contract which includes New York choice-of-law and forum selection provisions.[2] "[T]he interpretation of a contract is ordinarily a matter of state law to which [federal courts] defer." DIRECTV, Inc. v. Imburgia, 577 U.S. 47, 54, 136 S. Ct. 463, 193 L. Ed. 2d 365 (2015). Furthermore, and as stated, one of the main issues currently litigated in the New York State Case includes the validity —under New York law— of the 2018 Agreement that, according

---

[2] 2018 Agreement, Docket No. 85, Exhibit I, page 14, Section 22(d) and (e):
    (d) <u>Governing Law</u>. <u>This Agreement shall be governed by and construed in accordance with the laws of the State of New York in the United States of America</u>, applicable to contracts made and performed therein and without regard to conflict of laws provisions. All other laws, rules, regulations and conventions which may otherwise apply to this Agreement, including the United Nations Convention on Contracts for the International Sales of Goods, are excluded and do not apply to this Agreement.
    (e) <u>Resolution of Disputes</u>. Any and all disputes, differences, controversies or claims arising out of or in connection with this Agreement, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by in the courts of the State of New York. The award shall be final and binding on the parties and may be entered and enforced in any court having jurisdiction. Nothing herein shall affect the Company's right to bring an action or proceeding against the Manufacturer in the courts of any jurisdiction as provided for in Paragraph 22(f) hereof.

to Plaintiff gives rise to the entirety of the tortious interference claims asserted in the Puerto Rico Federal Case. Therefore, the fifth factor also weighs in favor of abstention.

### D. The adequacy of the state forum to protect the parties' interests

As to the sixth factor, it is neutral, as both courts can adequately protect the parties' interests. *See generally* United States v. Fairway Cap. Corp., 483 F.3d 34, 43 (1st Cir. 2007) (understanding "this factor to be important only when it disfavors abstention").

### E. The vexatious or contrived nature of the federal claim

The seventh factor requires that the Court scrutinize a plaintiff's motive for filing a second federal claim. Specifically, it is intended to prevent forum shopping on behalf of a plaintiff who "rushes to the federal courthouse solely in reaction to its failure in the state court, and in the hopes of obtaining a more favorable determination." Valle-Arce v. Puerto Rico Ports Auth., 585 F. Supp. 2d 246, 253 (D.P.R. 2008) (citing Malave v. Centro Cardiovascular de Puerto Rico y Del Caribe, 485 F. Supp. 2d 6, 9-10 (D.P.R. 2007)).

The Court notes that Liptis USA first filed a claim relating to the 2018 Agreement at the New York State Court. It asserted causes of action sounding in breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment,

and seeking injunctive relief in addition to monetary damages. Later, it filed a *First Amended Verified Complaint* against Liptis Egypt —the day after filing the Amended Complaint in the Puerto Rico Federal Case— adding trademark infringement, dilution, and unfair competition claims. It is also notable that, while the case before this Court is pending, Liptis USA sought to amend the New York complaint to include causes of action relating to tortious interference. The New York State Court denied it and concluded:

> Though not pled with the same level of detail, these are the exact same facts that form the basis of the tortious interference with a contractual relationship claim being pursued in the Puerto Rico action as against the Ingraham Group and Sami Omar, the COO of Liptis Egypt. *See* NYSCEF Docket No 112 at 4.

In addition, Ingraham alleges that Liptis USA intends to use confidential documents to be obtained through discovery in the Puerto Rico Federal Case for other pending and future cases. Both, the timing of the filings, and the actions of Liptis USA, raise suspicions as to vexatious or contrived nature of the federal claim, that weigh in favor of abstention.

Finally, the eighth factor, respect for the principles underlying removal jurisdiction, does not apply.

Of the eight factors, four of them are neutral or inapplicable and four —the desirability of avoiding piecemeal litigation; progression of the case; the source of law; and the vexatious or contrived nature of the federal claim— weigh in favor of concluding

that this Court is before an extraordinary case that warrants surrendering jurisdiction. Mainly, there is an issue of New York State law that, although not complex or novel, pertains to the validity of the 2018 Agreement. That is the crux of the causes of action before the Federal Court and the New York State Case's resolution could moot or otherwise inform the federal litigation. Currie v. Grp. Ins. Comm'n, 290 F.3d at 3.

### F. A Stay or a Dismissal of the Federal Proceedings

After finding that Colorado River abstention is proper, the Court must determine whether the appropriate disposition is a dismissal or stay of the proceedings.

The Supreme Court found "no occasion ... to decide whether a dismissal or a stay should ordinarily be the preferred course of action when a district court properly finds that Colorado River counsels in favor of deferring to a parallel state-court suit." Moses H. Cone Mem'l Hosp., 460 U.S. at 28. The First Circuit, however, has historically favored a stay as "it may likely produce the same result as a dismissal while still leaving the docket open in case loose ends remain at the conclusion of the state proceedings." Jiménez, 597 F.3d at 31 (citations omitted). This is favored given that a stay as is the more cautious route with no harm to judicial efficiency. See Rivera-Feliciano v. Acevedo-Vila, 438 F.3d 50, 62 (1st Cir. 2006); Currie v. Grp. Ins. Comm'n, 290 F.3d at 12.

## IV. CONCLUSION

An analysis of the eight Colorado River factors weights in favor of concluding that this is an extraordinary case that warrants abstention. Defendants' *Motion to Stay Proceedings under the Colorado River Doctrine* (Docket No. 57) is **GRANTED**. The case is hereby **STAYED** pending resolution of the state proceedings.

IT IS SO ORDERED.

In San Juan, Puerto Rico.

June 7, 2023.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE
